IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

_____

| | | |
|---|---|---|
| BRANDON J. BURNS, | ) | Cause No. CV 11-96-BLG-RFC-CSO |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | FINDINGS AND RECOMMENDATION |
| | ) | OF U.S. MAGISTRATE JUDGE |
| MIKE MAHONEY; ATTORNEY | ) | |
| GENERAL OF THE STATE OF | ) | |
| MONTANA, | ) | |
| | ) | |
| Respondents. | ) | |

_____

On August 26, 2011, Petitioner Brandon Burns filed this action for a writ of habeas corpus under 28 U.S.C. § 2254. Burns is a state prisoner proceeding pro se.

## I. Preliminary Screening

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts requires courts to examine the petition before ordering the respondent to file an answer or any other pleading. The petition must be summarily dismissed "[i]f it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." *Id.*

## II. Background

Burns was convicted on a felony charge of driving with excessive blood-alcohol concentration ("DUI per se"), designated a persistent felony offender, sentenced to serve 15 years in prison with five suspended, and fined $5,000.00. Pet. (doc. 1) at 2 ¶¶ 1-4. He pled guilty on condition he could appeal the denial of his pretrial motions. *Id.* at 3 ¶ 5. On July 14, 2011, the Montana Supreme Court affirmed his conviction. *State v. Burns*, 256 P.3d 944, 947 ¶ 1 (Mont. 2011).

## III. Analysis

Although there may be procedural bars to Burns's claims, it is clear that he is not entitled to relief on the merits. The most efficient course of action is to address the merits directly. 28 U.S.C. § 2254(b)(2); *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997) (making detailed analysis of constitutional issue despite outstanding question as to procedural bar); *Gutierrez v. Griggs*, 695 F.2d 1195, 1198 (9th Cir. 1983).

### A. Issue 1

Burns contends his rights under the Fourth Amendment were violated when law enforcement effected the contact with him that led to his arrest and conviction. *See* doc. 1-1.

1. **Facts**

Burns does not dispute the following facts. On a cold and snowy December night in Billings, a grandmother who was expecting the arrival of her daughter and grandchildren looked out her front window and saw an unfamiliar maroon car pull up to the curb in front of her house. It stopped but remained running, and its lights were on. She ignored the vehicle. Ten or fifteen minutes later when her daughter arrived, her daughter asked who was parked in front of the house. Puzzled, the daughter and her husband went out to investigate about fifteen minutes after their arrival. They saw the driver, apparently passed out, sitting in the front seat. Because it was very cold, the car had been running for almost half an hour and might run out of gas, and the driver was passed out, and because the grandmother did not particularly care to have a stranger passed out in a running vehicle in front of her house while her grandchildren were running around, she called 911. She used words to the effect that the driver was or might be drunk. Hr'g Tr. (doc. 1-2) at 3:24-12:23.

The 911 dispatcher relayed a call to patrol cars in the area about a suspected DUI, advising officers that a male subject had been reported as passed out in a vehicle in front of a house on Avenue C in Billings. *Id.* at 15:5-19, 20:18-21, 37:14-19. Two officers responded to the house on Avenue C. One officer knocked at least twice on the driver's side window in an attempt to rouse the occupant. *Id.* at 37:21-38:16. The

other approached on the passenger side. Burns did not respond to the officers' presence. The officer on the passenger side opened the door, reached across the front seat, switched off the ignition, and "pushed on his shoulder a couple times" to wake him. *Id.* at 18:2-8, 23:3-15.

### 2. <u>Analysis</u>

Burns insists the officers were investigating a suspected DUI, not checking on his welfare as the State argued. Pet. Issue 1 (doc. 1-1). His arguments fail to appreciate that Fourth Amendment analysis is objective and is not affected by the subjective intentions of the officers.

Burns does not dispute that the 911 call described an unconscious driver inside a vehicle. As soon as the officers could see the vehicle, they could see that it was running and its lights were on. Hr'g Tr. at 17:14-17, 47:19-22. They confirmed the driver was unresponsive because he did not respond. *Id.* at 33:3-6, 37:21-38:22. From this evidence, they could rationally draw three inferences. If the driver were sleeping, he probably would have been awakened by the first officer's knocking on the window, so he was likely not sleeping but unconscious, as the 911 caller had said. If he was drunk, it was not safe for him to be in a running vehicle (or for them to be near it) when he might suddenly wake up and do something unpredictable, such as throwing the car into gear and stepping on the accelerator. And if Burns had suffered

a medical emergency, he needed immediate assistance.  These are "specific, articulable facts which, taken together with rational inferences from those facts, reasonably warrant[ed] that intrusion," that is, the officer's reaching into the vehicle to switch off the ignition and attempting to rouse Burns by shaking him.  *Terry v. Ohio*, 392 U.S. 1, 21 (1968).

At that point, Burns's return to consciousness indicated there was not a medical emergency.  But the fact that he thought he was a block away from where he actually was, his general disorientation, the odor in the vehicle, his doddering search for his license and registration, the bottle of vodka with one-third of its contents remaining, his red and glassy eyes, and his slurred speech, *e.g.*, Hr'g Tr. at 24:1-2, 33:20-34:10, 34:14-35:10, 40:13-18, 41:11-25, all confirmed and extended the officers' already objectively reasonable suspicions and justified the further intrusion of ordering him to step out of the vehicle.  *Id.* at 24:19-25.

Burns disputes some of these facts.  For instance, he claims there was no odor of alcohol, and the vodka bottle was not apparent until after he was ordered out of the vehicle.  Issue 1 at 2; Lawrence Report (doc. 1-2 at 17).  The testimony at the hearing established otherwise.  Hr'g Tr. at 26:17-27:4, 34:14-35:15.  And, even if one or more of these facts was not discovered until after Burns stepped out of the vehicle, it does not matter because the undisputed evidence of Burns's conduct and appearance inside

the vehicle, combined with the facts justifying the switching off of the ignition, were sufficient to warrant ordering him to step out to determine his ability to operate the vehicle safely.

In sum, a police officer is not required to ignore compelling circumstantial evidence of crime merely because he is also concerned about the welfare of an unconscious driver inside a running vehicle. Reasonable suspicion to justify a temporary intrusion is all the Fourth Amendment demands. *Whren v. United States*, 517 U.S. 806, 813 (1996), which squarely holds that an officer's "[s]ubjective intentions play no role in ordinary, probable cause Fourth Amendment analysis." *See also, e.g.*, *Arkansas v. Sullivan*, 532 U.S. 769, 771 (2001); *United States v. Robinson*, 414 U.S. 218, 221 n.1 (1973).

This claim should be denied for lack of merit.

**B. Issue 2**

Burns also challenges a 1997 misdemeanor DUI conviction as unconstitutional because he was deprived of a jury trial after he failed to appear at a pretrial conference he did not know was scheduled. He also complains that he was notified only that a warrant would be issued for his arrest if he failed to appear for trial, not that he would be tried *in absentia*. Issue 2 (doc. 1-3) at 1-2.

Under Montana law, if a prior misdemeanor on which the State relies to elevate

a subsequent DUI conviction to a felony offense was constitutionally infirm, the felony offense must be reduced to a misdemeanor. *Burns*, 256 P.3d at 952 ¶ 40. As under federal law, a presumption of regularity attaches to a prior criminal conviction used to enhance punishment for a later offense. *Id.* at 953 ¶ 41. The presumption of regularity means that Burns cannot merely claim that the State failed to prove the 1997 conviction valid; he must prove it invalid.

Assuming, for the sake of argument, that Burns's 1997 conviction presents a due process claim cognizable in federal habeas jurisdiction at this late date, he still does not prevail. The trial court held a hearing on Burns's challenge to his 1997 conviction. The judge who presided over those proceedings testified:

> Q. According to that docket sheet, the defendant was charged with three offenses; is that correct?
>
> A. Yes.
>
> Q. And what were they?
>
> A. Well, the first charge was driving under the influence of alcohol, the second charge was no – having no proof of vehicle insurance, and the third charge was failure to have a driver's license.
>
> Q. And what happened to the last two charges?
>
> A. Well, on the second offense . . . I dismissed that upon proof that he – he must have shown me that he had insurance on the vehicle. And on the driver's license charge, I issued him a warning.

Q. Under the word "attorney," you wrote "waive." And that's your handwriting on the docket sheet; is that correct?

A. That's correct.

Q. And what does that mean?

A. That means that he would have waived his – he would have waived his right to a Court-appointed counsel.

Q. Was that also reflected in Exhibit 2?

A. Yes, it is.

Q. And Exhibit 2 is the waiver of Court-appointed attorney?

A. Right. And that also tells him what the offense was and also the possible penalties that could be imposed, and he did sign that.

Q. And returning to the docket sheet, on the line next to trial date/time, you wrote 8-20-97 at 10. When did you write that?

A. I would have written that the same date that he appeared for his arraignment.

Q. Is that what you did at every arraignment?

A. Yes.

Q. When you wrote that date down, was the defendant informed?

A. Yes. He would have been in court at that time. All of this, the entire docket sheet would have been written while I was – while he was in court, other than the trial portion, which would have been on 7-15 of '97.

Q. Okay. Well, let's talk about 7-15 of '97. Was that the trial or the

>           pretrial?
>
> A.        Excuse me. That would have been the pretrial conference.
>
> Q.        Would the defendant – when would the defendant have been informed of the pretrial date?
>
> A.        He should have been informed of the pretrial date at the time of his arraignment, because it was a jury trial.

Hr'g Tr. (doc. 1-4) at 8:18-10:16.

Burns seizes on ambiguity in the record as to whether he knew about the date of the pretrial conference, because his failure to attend that conference forfeited his right to be tried by a jury. If Burns did not receive notice of the pretrial conference, he might well have successfully challenged that forfeiture when he appeared for trial. But he failed to appear at trial, even though he knew the scheduled date and time for it. The fact that he thought he was absent from a jury trial, when in fact he was absent from a bench trial, has no bearing on the validity of his conviction.

Burns concedes that the trial court notified him that he "must appear ready for trial" on the trial date and that, if he did not, a warrant would be issued for his arrest. Issue 2 (doc. 1-3 at 2). In addition, Mont. Code Ann. § 46-16-122 provides:

> (1) In a misdemeanor case, if the defendant fails to appear in person, either at the time set for the trial or at any time during the course of the trial and if the defendant's counsel is authorized to act on the defendant's behalf, the court shall proceed with the trial unless good cause for continuance exists.

> (2) If the defendant's counsel is not authorized to act on the defendant's behalf as provided in subsection (1) or if the defendant is not represented by counsel, the court, in its discretion, may do one or more of the following:
> \*\*\*\*
> (d) proceed with the trial after finding that the defendant had knowledge of the trial date and is voluntarily absent.

A trial court need not conduct an on-the-record inquiry into the reasons for a defendant's absence at trial; it is sufficient if the trial court finds that the defendant had knowledge of the trial date and was voluntarily absent, where defendant did not provide any verification of reasons for his absence. *See State v. Clark*, 115 P.3d 208, 210-11 (2005). Here, Burns had knowledge of the time set for trial and the trial court properly proceeded to try him in absentia pursuant to Mont. Code Ann. § 46-16-122.

Burns's conviction is not invalid if he thought he was absent from a jury trial when in fact he was absent from a bench trial. He also contends that the trial court should have told him trial would proceed despite his absence, but the state statute quoted above provided notice of that fact. The trial court had no obligation to add a second warning.

Burns's second claim should also be denied.

### IV. <u>Certificate of Appealability</u>

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254

Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Burns does not make a substantial showing that his federal constitutional rights were violated. His claim regarding the reasonableness of the search under the Fourth Amendment is confused by a state-law doctrine centered on the officers' intentions in making contact with a subject. Officers' subjective intentions play no role in federal Fourth Amendment analysis, and the record establishes that they acted in an objectively reasonable manner with reasonable suspicion and then probable cause at each stage of the developing situation.

Burns's second claim alleges that a 1997 misdemeanor DUI conviction was invalid because he inadvertently waived his right to be tried by a jury by missing a pretrial conference. But he also failed to appear at trial and was convicted *in absentia*, despite knowing the date and time for trial. His conviction is not invalid merely because he thought he was absent from a jury trial when in fact he was absent

from a bench trial. He also contends that the trial court should have told him trial would proceed despite his absence, but a state statute provided notice of that fact. The trial court had no obligation to add a second warning.

Burns's case presents no open questions and nothing on which reasonable jurists could disagree. There is no reason to encourage further proceedings. A certificate of appealability is not warranted.

Based on the foregoing, the Court enters the following:

### RECOMMENDATION

1. The Petition (doc. 1) should be DENIED on the merits.

2. The Clerk of Court should be directed to enter by separate document a judgment in favor of Respondents and against Petitioner.

3. A certificate of appealability should be DENIED.

### NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), Burns may serve and file written objections to these Findings and Recommendations within fourteen (14) days of the date entered as indicated on the Notice of Electronic Filing. If Burns files objections, he must itemize each factual finding to which objection is made and must identify the evidence in the record that he relies on to contradict that finding; and he must itemize

each recommendation to which objection is made and must set forth the authority he relies on to contradict that recommendation. Failure to assert a relevant fact or argument in objection to this Findings and Recommendation may preclude Burns from relying on that fact or argument at a later stage of the proceeding. A district judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendation. Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

<u>Burns must immediately inform the Court of any change in his mailing address</u> by filing a "Notice of Change of Address." Failure to do so may result in dismissal of his case without notice to him.

DATED this 6th day of December, 2011.

/s/ Carolyn S. Ostby
United States Magistrate Judge