IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| BRANDON J. BURNS, | ) |
| | ) Cause No. CV-11-96-BLG-RFC |
| Petitioner, | ) |
| | ) |
| v. | ) ORDER ADOPTING FINDINGS |
| | ) AND RECOMMENDATIONS OF |
| MIKE MAHONEY; ATTORNEY | ) U.S. MAGISTRATE JUDGE |
| GENERAL OF THE STATE OF | ) |
| MONTANA, | ) |
| | ) |
| Respondents. | ) |
| | ) |

United States Magistrate Judge Carolyn Ostby has entered Findings and Recommendation (*doc. 9*) with respect to Burns' 28 U.S.C. § 2254 petition for writ of habeas corpus. *Doc. 1*. Judge Ostby recommends the petition be denied.

Upon service of a magistrate judge's findings and recommendation, a party has 14 days to file written objections. 28 U.S.C. § 636(b)(1). Burns filed a request for extension of time to file his objections and then filed his objections for the Court's consideration. Accordingly, the Court must make a *de novo* determination of those portions of the Findings and Recommendations to which

1

objection is made. 28 U.S.C. § 636(b)(1). For the following reasons, Burns' objections are overruled.

## BACKGROUND FACTS

Burns was convicted on a felony charge of driving with excessive blood-alcohol concentration ("DUI per se"), designated a persistent felony offender, sentenced to serve 15 years in prison with five suspended, and fined $5,000.00. Pet. (*doc. 1*) at 2 ¶¶ 1-4. He pled guilty on condition he could appeal the denial of his pretrial motions. Id. at 3 ¶ 5. On July 14, 2011, the Montana Supreme Court affirmed his conviction. *State v. Burns*, 256 P.3d 944, 947 ¶ 1 (Mont. 2011).

## ANALYSIS

I. **Issue 1: Fourth Amendment Rights**

Burns contends his rights under the Fourth Amendment were violated when law enforcement effected the contact with him that led to his arrest and conviction. *See doc. 1-1*.

On a cold and snowy December night in Billings, a grandmother who was expecting the arrival of her daughter and granddaughter looked out her front window and saw an unfamiliar maroon car pull up to the curb in front of her house. It stopped but remained running, and its lights were on. She ignored the

2

vehicle. Ten or fifteen minutes later when her daughter arrived, her daughter asked who was parked in front of the house. Puzzled, the daughter and her husband went out to investigate about fifteen minutes after their arrival. They saw the driver, apparently passed out, sitting in the front seat. Because it was very cold, the car had been running for almost half an hour and might run out of gas, and the driver was passed out, and because the grandmother did not particularly care to have a stranger passed out in a running vehicle in front of her house while her grandchildren were running around, she called 911. She used words to the effect that the driver was or might be drunk. Hr'g Tr. (*doc. 1-2*) at 3:24-12:23.

The 911 dispatcher relayed a call to patrol cars in the area about a suspected DUI, advising officers that a male subject had been reported as passed out in a vehicle in front of a house on Avenue C in Billings. *Id.* at 15:5-19, 20:18-21, 37:14-19. Two officers responded to the house on Avenue C. One officer knocked at least twice on the driver's side window in an attempt to rouse the occupant. *Id.* at 37:21-38:16. The other approached on the passenger side. Burns did not respond to the officers' presence. The officer on the passenger side opened the door, reached across the front seat, switched off the ignition, and "pushed on his shoulder a couple times" to wake him. *Id.* at 18:2-8, 23:3-15.

Burns insists the officers were investigating a suspected DUI, not checking on his welfare as the State argued. Pet. Issue 1 (*doc. 1-1*). His arguments fail to appreciate that Fourth Amendment analysis is objective and is not affected by the subjective intentions of the officers.

Burns does not dispute that the 911 call described an unconscious driver inside a vehicle. As soon as the officers could see the vehicle, they could see that it was running and its lights were on. Hr'g Tr. at 17:14-17, 47:19-22. They confirmed the driver was unresponsive because he did not respond. *Id.* at 33:3-6, 37:21-38:22. From this evidence, they could rationally draw three inferences. If the driver were sleeping, he would have been awakened by the first officer's knocking on the window, so he was likely not sleeping but unconscious, as the 911 caller had said. If he was drunk, it was not safe for him to be in a running vehicle (or for them to be near it) when he might suddenly wake up and do something unpredictable, such as throwing the car into gear and stepping on the accelerator. And if Burns had suffered a medical emergency, he needed immediate assistance. These are "specific, articulable facts which, taken together with rational inferences from those facts, reasonably warrant[ed] that intrusion," that is, the officer's reaching into the vehicle to switch off the ignition and attempting to rouse Burns by shaking him. *Terry v. Ohio*, 392 U.S. 1, 21 (1968).

At that point, Burns's return to consciousness indicated there was not a medical emergency. But the fact that he thought he was a block away from where he actually was, his general disorientation, the odor in the vehicle, his doddering search for his license and registration, the bottle of vodka with one-third of its contents remaining, his red and glassy eyes, and his slurred speech, e.g., Hr'g Tr. at 24:1-2, 33:20-34:10, 34:14-35:10, 40:13-18, 41:11-25, all confirmed and extended the officers' already objectively reasonable suspicions and justified the further intrusion of ordering him to step out of the vehicle. *Id.* at 24:19-25.

Burns disputes some of these facts. For instance, he claims there was no odor of alcohol, and the vodka bottle was not apparent until after he was ordered out of the vehicle. However, the testimony at the hearing established otherwise. Hr'g Tr. at 26:17-27:4, 34:14-35:15. And, even if one or more of these facts was not discovered until after Burns stepped out of the vehicle, it does not matter because the undisputed evidence of Burns's conduct and appearance inside the vehicle, combined with the facts justifying the switching off of the ignition, were sufficient to warrant ordering him to step out to determine his ability to operate the vehicle safely.

A police officer is not required to ignore compelling circumstantial evidence of crime merely because he is also concerned about the welfare of an

5

unconscious driver inside a running vehicle. Reasonable suspicion to justify a temporary intrusion is all the Fourth Amendment demands. *Whren v. United States*, 517 U.S. 806, 813 (1996), which squarely holds that an officer's "[s]ubjective intentions play no role in ordinary, probable cause Fourth Amendment analysis." *See also, e.g., Arkansas v. Sullivan*, 532 U.S. 769, 771 (2001); *United States v. Robinson*, 414 U.S. 218, 221 n.1 (1973).

This claim must be denied for lack of merit.

## II. Issue 2: Jury Trial

Burns also challenges a 1997 misdemeanor DUI conviction as unconstitutional because he was deprived of a jury trial after he failed to appear at a pretrial conference he did not know was scheduled. He also complains that he was notified only that a warrant would be issued for his arrest if he failed to appear for trial, not that he would be tried *in absentia*. Issue 2 (*doc. 1-3*) at 1-2.

Burns failed to appear at trial, even though he knew the scheduled date and time for it. The fact that he thought he was absent from a jury trial, when in fact he was absent from a bench trial, has no bearing on the validity of his conviction.

Burns concedes that the trial court notified him that he "must appear ready for trial" on the trial date and that, if he did not, a warrant would be issued for his

arrest. Issue 2 (*doc. 1-3 at 2*). In addition, Mont. Code Ann. § 46-16-122 provides:

> (1) In a misdemeanor case, if the defendant fails to appear in person, either at the time set for the trial or at any time during the course of the trial and if the defendant's counsel is authorized to act on the defendant's behalf, the court shall proceed with the trial unless good cause for continuance exists.
>
> (2) If the defendant's counsel is not authorized to act on the defendant's behalf as provided in subsection (1) or if the defendant is not represented by counsel, the court, in its discretion, may do one or more of the following:
> \*\*\*\*
> > (d) proceed with the trial after finding that the defendant had knowledge of the trial date and is voluntarily absent.

A trial court need not conduct an on-the-record inquiry into the reasons for a defendant's absence at trial; it is sufficient if the trial court finds that the defendant had knowledge of the trial date and was voluntarily absent, where defendant did not provide any verification of reasons for his absence. *See State v. Clark*, 115 P.3d 208, 210-11 (2005). Here, Burns had knowledge of the time set for trial and the trial court properly proceeded to try him in absentia pursuant to Mont. Code Ann. § 46-16-122.

Burns's conviction is not invalid if he thought he was absent from a jury trial when in fact he was absent from a bench trial. He also contends that the trial

court should have told him trial would proceed despite his absence, but the state statute quoted above provided notice of that fact. The trial court had no obligation to add a second warning.

This claim must also be denied for lack of merit.

## III. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Burns does not make a substantial showing that his federal constitutional rights were violated. His claim regarding the reasonableness of the search under the Fourth Amendment is confused by a state-law doctrine centered on the officers' intentions in making contact with a subject. Officers' subjective

intentions play no role in federal Fourth Amendment analysis, and the record establishes that they acted in an objectively reasonable manner with reasonable suspicion and then probable cause at each stage of the developing situation.

Burns's second claim alleges that a 1997 misdemeanor DUI conviction was invalid because he inadvertently waived his right to be tried by a jury by missing a pretrial conference. But he also failed to appear at trial and was convicted in absentia, despite knowing the date and time for trial. His conviction is not invalid merely because he thought he was absent from a jury trial when in fact he was absent from a bench trial. He also contends that the trial court should have told him trial would proceed despite his absence, but a state statute provided notice of that fact. The trial court had no obligation to add a second warning.

Burns's case presents no open questions and nothing on which reasonable jurists could disagree. There is no reason to encourage further proceedings. A certificate of appealability is not warranted.

After a de novo review, the Court determines the Findings and Recommendation of Magistrate Judge Ostby are well grounded in law and fact and HEREBY ORDERS they be adopted in their entirety.

Accordingly, **IT IS HEREBY ORDERED** that the Petition (*doc. 1*) is **DENIED** on the merits and a certificate of appealability is **DENIED**.

The Clerk of Court is directed to enter by separate document a judgment in favor of Respondents and against Petitioner.

DATED this 27th day of December, 2011.

/s/ Richard F. Cebull
RICHARD F. CEBULL
UNITED STATES DISTRICT JUDGE